May it please the Court, my name is Rory Little. I'm a law professor at Hastings here in San Francisco and senior counsel at McDermott, Will and Emery, and seated with me at counsel table are Matt Jacobs, Gordon Greenberg, and Peter Drobak, who are trial counsel. I'd like to try to reserve five minutes for rebuttal. Before you begin, and this will not count against your time, there was some various correspondence with the Court by way of 28J letters and objections to the 28J letters and that sort of thing. We are going to take those objections and matters under advisement and not rule on them at the moment, so. Thank you, Your Honor. Twenty-one years ago in United States v. Crozier, this Court endorsed a constitutional fail-safe mechanism for third parties whose assets are seized by the government as forfeitable. In Crozier, the Court ruled that regardless of what the forfeiture statutes may say, the Constitution requires as a matter of due process that a third party whose assets are seized ex parte must be granted a hearing to challenge the basic illegality of the government's actions. Five years after Crozier, this Court reaffirmed its ruling in Roth, and in Roth it made clear that third parties must be provided a prompt hearing in which probable cause that the assets are forfeitable must be shown. Since Crozier was decided, at least six other circuits have agreed with the basic premise that when the government acts ex parte to seize the assets of third parties claiming that the assets are forfeitable, due process requires the district court provide some kind of prompt hearing at which the basic legality of the action, which is another way of describing probable cause, can be challenged.  Breyer, what is your calculation of the delay that has been suffered? It seems to me there's a dispute between the parties as to how we compute the number of months that have passed. There is some dispute, Your Honor. I don't think the dispute matters, I think, would be the first thing I'd say. That is, for the liquidators, the money was seized in January of 2005, and it has never been unseized since that day. So it is from January 2005 until now. Even if the government's claim that it is the criminal seizure warrant that begins the clock applies, that was in October, almost exactly a year ago. And under either period of delay, the Crozier-Roth rule requiring a prompt hearing has simply not been complied with. Why isn't the ancillary proceeding, regardless of whether we can take notice of its current status, a sufficient form or forum in which to resolve the claim? Because, Your Honor, it's just not prompt. It is simply not prompt. And to read the word prompt out of the Crozier-Roth rule is to overrule those cases sub silencio. The reason promptness matters is because there is no probable cause that these assets are forfeitable in the criminal case. The substance of that has now been determined, has it not, by the jury, which has determined by proof beyond a reasonable doubt that the assets are forfeitable. Actually, no, Your Honor, because the forfeiture allegations in the criminal case were severed from the guilt-innocence determination. I thought I looked at a special verdict form that actually included findings with regard to the property. Did I misunderstand? You know, Your Honor, I have to say, I'll have to check. I don't think so. Okay. So the government should know what their form of verdict says, so we can ask them. Right. Well, and more importantly, what I do know is that there was a moment in time prior to trial where the forfeiture allegations were, there was a waiver of the jury trial on that issue, and that's in the record, and we've cited that. But the district court did enter a preliminary order of forfeiture, did it not? Yes. And if that order has been entered, doesn't that constitute a final determination in the criminal case that the assets are criminally forfeitable? Well, it's a preliminary order of forfeiture. It does constitute the district court's findings on that issue. We are appealing from that order. Well, if you have standing to do so, which obviously is the question as well. But all I'm asking, Professor Little, is whether or not, you're making an argument on probable cause, and I'm trying to figure out whether or not there's already been a determination by proof beyond a reasonable doubt that these assets are criminally forfeitable. I don't believe so, Your Honor. But I will stand up and rebuttal and let you know what I think about that. I honestly don't believe that's accurate. All right. I do want to make the point, though, that the substantive protections that are inherent in the Crozier-Roth rule are starkly demonstrated in this case. That is to say, the probable cause that these assets are forfeitable has to include some explanation as to why res judicata, statute of limitations, and the act of State doctrine don't interfere with that. In other words, when the reason a prompt hearing is required is because these assets should never have been placed into the criminal forfeiture proceeding. They were tried to be forfeited in the civil proceeding. The government conceded over a five-year delay there. And that action was dismissed with prejudice. And there's no explanation, if you look at the criminal seizure affidavit or warrant, as to why that doesn't preclude the criminal action. The same is true with the statute of limitations argument. They conceded in the civil case more than five years' delay. Suddenly, they then, in 2005, decide to forfeit criminally. That isn't fair notice. And this Court has made clear, and the Supreme Court has made clear, that statute of limitations exists to provide fair notice. Is it the same statute of limitation? I don't think so, Your Honor. It's the same period. Right. But it's not the same statute. It's a different statute, is it not? So that if the government files their RICO indictment alleging a conspiracy, and the last overt act is within whatever the period is, five or seven years, then it's timely so far as the criminal proceeding is concerned, is it not? Well, yes, Your Honor, that's correct. The statute does say, and we don't contest that the five-year period of limitations wasn't satisfied with regard to guilt-innocence. We don't contest that here. But you are arguing, I think, collateral estoppel res judicata based on what happened in the civil proceeding. Well, we are. But we're also arguing that the statute of limitations has been violated with regard to the forfeiture of this property. Those are separate arguments. And I'd like to pursue both of them here. But I just want to make the point, the promptness of the hearing, which is where Judge Graber started, has to do with the substantive protection that's offered to third parties. If there's no legal basis for the forfeiture effort to begin with, parties should not have to wait two, three, four, five years. And that's what the wait will be here. On the ancillary proceeding, Your Honor, just let me say, Congress, when it amended and enacted Rule 32.2, says in its commentary, we recognize these proceedings often take years. Section D, subsection D of 32.2, actually says that even once that ancillary proceeding begins and the defendant has taken his appeal, even if we win, the property can't be returned until the defendant's appeal is over, which, believe me, will take two or three years. It's a very complex appeal. Well, part of the problem, as I understand it, is caused by the relation back theory, isn't it? The question ultimately is who has the best title to this property. And if the government is correct and it wins in the criminal case, then in point of time, you lose, do you not? Because their title is superior under their at least it's sooner in time under the relation back theory. I do understand the relation back doctrine, although I think they're asking for pretty strong reach on this one. But the answer to your question, Judge Tomlin, is really no, because res judicata and statute of limitations arguments require dismissal of untimely actions or duplicative actions that were finally decided without regard to these other factors. That is to say, even if they're right about they held title as of 1999 before the money was even put into Euro Fed Bank, if they didn't file timely or if they didn't if they filed a duplicative action under the Koonin First Circuit case, they cannot be permitted to forfeit here. It is a and a very important statement is what Justice Rehnquist said in the Federated Holmes case where he said equitable case-by-case application of res judicata is not appropriate. It is a doctrine which is best served by even-handed application in all cases without regard to whose ox is gored. So even if the equities seem wrong to the Court, and I think they're right for us, that would not be a defense on that. I'm going to go back to the question of the ancillary proceedings which are provided by statute. If you were ultimately to prevail in those, you would get your money back, correct? I certainly hope so, Your Honor. The United States would be divested of it, as I understand the statute. I hope that that's correct, yes, Your Honor. And does the statute provide interest in that circumstance? Well, we had a little dispute about that in the lower court. We said that it wasn't at all clear that we would get interest. The government said, well, you have an opportunity to ask for interest, but there was no settlement of that issue. I'm confident that the government will oppose our request for interest when we file it, but I don't know that I have legal authority to tell you the clear answer on that question. I'm confident they will oppose it. We don't have – I mean, there's another dispute between prejudgment interest, post-judgment interest. We probably almost certainly get the post-judgment interest. I think we get prejudgment, too, but I think the government will argue that we don't. And the judgment, they will say, runs from when we win in the ancillary proceeding, which is going to be three years after they seize the money. Well, I will ask them the same question, or they can answer it without my asking. Yeah. We asked them to answer that below, and they did not. Let me just make one other point. The jurisdictional basis for the case being here is that – let me just say, without getting into specifics, I believe that entitles the parties, meaning the liquidators, to a ruling from this Court as to claim preclusion, statute of limitations, and act of State. That is to say, we are appealing from the grant of a preliminary injunction, or if you prefer, we are appealing from the denial of a motion for return of property. This Court has – Judge Graber wrote in the Anderson case that sometimes you might construe one action as another. In either case, we are permitted to appeal, and that appeal entitles us to a ruling. Now, the government concedes at page 15 of its brief that this Court's standard of review is de novo. And the three facts we need are undisputed. One, the prior action was dismissed with prejudice. Two, the government conceded more than a five-year delay there, which is the statute of limitations argument. And three, this is an interference with Antigua's proceeding. Antigua is seeking to liquidate and forfeit these same assets. They started their proceeding in 1999. Judge Legg ruled in the year 2000 it was a legitimate, independent, and sovereign action. And those facts are not disputed. So this Court is in as good a position as the district court to rule on the merits of this action. So I would like to, frankly, reserve the remainder of my time unless the Court has questions. And simply ask that the Court issue an order that these assets be returned to the liquidators because they should have never been in the proceeding in the first place. Thank you, Your Honor. Thank you. We'll hear from Ms. West. Good morning. May it please the Court. My name is Hartley West. I'm an assistant U.S. attorney here in San Francisco, and I represent the United States in this matter. First, Your Honor, I'll address your question with regard to the interest in this case. We believe that in the circumstances of this case that interest would be provided. My understanding is that it would be the interest actually earned by the government on the funds. So that's prejudgment interest. Let's say two years from today the ancillary proceeding is successful on behalf of this claimant. That they would get not only the base amount, but whatever interest the government had earned in the meantime on that money, plus then post-judgment interest. I believe so. Well, post-judgment interest would be covered by the statute. Right, but and okay, that's and you're authorized to make that concession on behalf of government. After speaking with the forfeiture unit, I believe that is something I am authorized to represent. Okay. Okay. Your Honors, let me start by saying that we believe this matter should be sent back to the district court for due process. And the reason for that, first, is that we believe the district court or, sorry, this court does not have jurisdiction to hear the liquidator's claims. And second, because the process in the district court is ongoing. As we stand here today, the defendant has already been sentenced. The claimants have already filed petitions regarding the forfeiture of funds. The ancillary proceeding is underway, and the district court is ready and waiting to proceed. Can you answer my question with regard to the criminal forfeiture? Has it been criminally forfeited? And if so, what is the evidentiary burden that was met to support the preliminary order of forfeiture? Well, there were two orders. The first is what the district court termed the preliminary order of forfeiture and which is what the liquidators appealed. That the district court judge, Judge Jenkins, found that there was preponderance of evidence of establishing the nexus to the predicate act of conviction of the money laundering. At this time now, the district court has also entered what is what it called the final order of forfeiture. But to be clear, that order is final only as to the defendant. It is the preliminary order of forfeiture that the liquidators appealed that opened the gateway to the ancillary proceedings. So the jury did not decide. There was a bifurcation of the forfeiture counts of the indictment from the criminal counts. Yes. Mr. Lazarenko waived having the jury decide that nexus and had the district court decide it. So in your conception of things, all of the arguments that are being made to us could be made to the district court in the context of the ancillary proceeding, including the questions of claim preclusion and issue preclusion? No. The reason for that is because the ancillary proceeding, the point of it according to Rule 32.2 and according to Section 853, is solely to establish whether the claimants have a superior interest. Now, as one of your Honors asked the liquidators, if they are deemed to have a superior interest, they get the money. That's it. If they are deemed not to have a superior interest, then they are essentially strangers to the property and do not have standing to raise the arguments such as raised judicata or statute of limitations that the owner of the property would have the standing to make. But couldn't that be part of the analysis of whether they have a superior right? To the extent it relates to the superior right, they can raise it. To the extent that it does not and it goes solely to challenge the underlying forfeitability of the assets, they cannot. Okay. Well, as I understood Professor Little's position, their position is that the government couldn't acquire title to it because it was statutorily barred, act-of-state doctrine, et cetera, and therefore, they win. That does seem to be the argument they are making. That is something that the district court has not considered and certainly has not ruled on. And so it's not right for this Court to address. But that would be one of the kinds, if I understood your dichotomy, that would be the kind of argument that could be made below, because the right would be superior if the government has no right at all. If the district court believed that to be true, then yes. Right. So they can at least raise that argument. Going back to the jurisdictional issues, because I think that is where this Court must begin, the liquidators have argued that this is an injunction. However, it is not reviewable as an injunction because a seizure is not an injunction. And if it were, every seizure would be automatically reviewable. Nor is it reviewable under the collateral order doctrine. The preliminary order of forfeiture, by its very nature, is not a final determination. And the denial of the liquidators' petition for an immediate hearing is also not a final order. Rather, the district court said, you'll have your hearing, but we're postponing it. It's appropriate to hear during the ancillary proceedings. Why don't we have jurisdiction under Rule 41? Under the motion for return of property? Yes. A motion for return of property is an equitable remedy and is not available where there's an adequate remedy at law. Now, the de Almeida case, which both parties have presented in their 28-J letter to the Court, expressly cited the Ninth Circuit's decision in Nava, which said that the only forum for a third party to present its interest in the forfeitability is in the ancillary proceeding and not during a motion for return of property. Now, the denial of the immediate hearing for a motion to return of property also goes to the merits of the forfeiture and is therefore not collateral and not reviewable under the collateral order doctrine. The arguments that the liquidators have been raising, res judicata, statute of limitations, they go to the merits of the forfeitability, whether there is, in fact, the adequate nexus. And moreover, any harm that they would suffer would be reviewable on appeal once the liquidators' rights have been determined in the ancillary proceeding. I'd also like to touch on standing and ripeness. Just briefly, in the Hillel case, which the liquidators also cited in their 28-J letter, the Ninth Circuit held that a nonparty does not have standing unless exceptional circumstances exist. And in the Hillel case, the Court held that the Republic of the Philippines, which claims that a settlement order interfered with its efforts pursuant to a Philippine Supreme Court judgment to collect funds held in the bank account, that that did not arise to the level of exceptional circumstances to justify nonparty standing. That the inconvenience of waiting until the interpleader action was resolved was simply not enough. That's exactly the same here. Any inconvenience that the liquidators may suffer for having to wait a few more months through the ancillary proceeding, which has already begun, does not arise to the level of exceptional circumstances and does not rise to standing. And finally, with regard to ripeness, as in the MHC case, the liquidators' claims are not fit for judicial decision because they have not engaged in the process. Congress went through a lengthy preparation of the forfeiture statutes, which have been revised, and they're very detailed about what the third party is allowed to raise its claims, and it provides specifically it needs to go through the ancillary proceeding. So until they do so, their claims are simply not ripe. And I'd like to turn to whether, in fact, a due process violation has occurred. The due process analysis requires that the Court  to a meaningful hearing at a meaningful time. And we submit that the district court engaged in the analysis exactly correctly by weighing the Matthews v. Eldridge factors. First, the district court concluded that, in fact, there was no due process was served in the civil forfeiture proceeding because the liquidators filed their motion for summary judgment, the Court heard it, and within a few weeks of the motion for summary judgment on the statute of limitations ground being filed, the court the district court ruled in their favor. Due process was served. Now, in October of 2005, the United States seized the money criminally, and the district court also weighed the Matthews v. Eldridge factors regarding the criminal seizure. Now, the Court held that, in this case, the jury had already found Mr. Lazarenko guilty. So there was very little risk of erroneous deprivation in that sense. And then, of course, where we are now, the Court has already conclusively determined that a nexus exists between the predicate act of money laundering and the forfeitable assets. So here, we have no risk of erroneous deprivation. And turning to the second factor, the district court considered the private interest affected. The liquidators have money that has been seized. It's not real property or personal property as enclosure in some of the other cases. It's money on which they can get interest if they are deemed to have a superior title. Now, turning finally to the public interest, the district court found that the Court had a significant interest in resolving the criminal and forfeiture proceeding against Mr. Lazarenko. And Judge Jenkins further found that the government has a significant interest in having all claimants litigate their third-party claims, their superior interest, all at the same time in one ancillary proceeding consistent with Statute Section 853N. So it seems that the liquidators have agreed to what the meaningful hearing is supposed to provide. It's supposed to provide whether there is – it's supposed to confirm whether there is probable cause that the underlying conviction would be found, and, second, probable cause that the assets are forfeitable. Both of those have been conclusively established at this time. Moreover, the process is happening at a meaningful time. It has been ongoing, as we said, in the district court. When the criminal seizure warrant occurred in October of 2005, approximately three months later, the liquidators filed their motion for return of property. And approximately three days after the motion for immediate hearing on that was denied, the district court ordered – issued its preliminary order of forfeiture. So process has been moving at a steady pace here. And one month after that gateway to the ancillary proceedings opened, the liquidators filed their claim for the ancillary proceeding. And, of course, at this time, the defendant has been sentenced. The district court is awaiting the party's statement regarding whether it should stay the ancillary proceedings pending this Court's determination, as well as regarding issues of discovery and motions, et cetera, in the ancillary proceedings. And there also have only been two claimants in the ancillary proceedings. So that indicates that it should move somewhat expeditiously. So given the fact that In fact, it was from the time that the ancillary proceedings opened with the issuance of the preliminary order of forfeiture, it had only been six months since the money was criminally seized. That is more than reasonable under the $8,850 in U.S. currency case, which also considers such factors as the reason for delay and prejudice. Again, no prejudice here. It's just money. Interest would be granted on it. And the reason for the delay, to the extent that there has been one, the evidence at trial showed that Mr. Lazarenko was a very sophisticated money launderer. It is complicated to unravel these transactions and to confirm the trace, the nexus to the forfeiture from the Predicate Act. Alitoson Ms. West, why didn't the filing of the notice of appeal divest the district court of jurisdiction to take any further action with regard to the ancillary proceedings? It appears, assuming that I can consider the supplemental material that was filed by the government, that the district court has been quite busy while the appeal has been pending. That's right. By what authority does it purport to continue to act when the matter is on appeal before us? The district court determined that it had the authority to continue with the sentencing of the defendant and that a third party could not take away its jurisdiction to sentence a defendant, and that the defendant has speedy trial hours. Well, I don't think there's any question about the fact that it can continue to proceed in the criminal case. The question is, by what authority does it act in the ancillary proceedings? Are you saying because it's part and parcel of the criminal case as opposed to a completely separate civil proceeding? Well, it's somewhere in between, Your Honor. A quasi-criminal proceeding? And quasi-civil. However, the district court at this time has asked the parties to brief whether it should stay the ancillary proceeding or not. And it's waiting for, what, a status report at the end of the month? That's right, Dr. Rupert, yes. After you all come back from this argument to tell Judge Jenkins what you think he should do? That's correct. Okay. The only thing that I think is important to say with regard to the raised judicata, statute of limitations, act of State doctrine that the liquidators have raised is that these issues are not ripe for this Court. The district court has not considered them. While it was briefed for the district court, it was never discussed at all during the hearing, and the district court certainly did not rule on them. And moreover, the liquidators, we believe, would not have standing to raise such arguments in the event they are determined to have a superior interest, as we discussed at the beginning. They – it wouldn't matter. They would get the money. To the extent that these arguments are relevant to the determination of their superior title, they have the opportunity to raise that in the district court, and the district court should have an opportunity to decide it. Well, is it a question of their superior title or simply a bar to the government's ability to assert that it has superior title? I think there's a difference analytically. Is there not? I don't know that there is. The purpose of the ancillary proceedings is to determine whether they have superior title. And if they are raising arguments that would, as a matter of law, establish their superior title, they can do so at the ancillary proceedings. Including the argument that the government, for one reason or another, is no longer allowed to argue to the contrary. In other words, here's – they say, here's our right to this money, and the government is barred from arguing that we don't for a variety of reasons. That would be okay. I believe that it would – if it would establish that they, as a matter of law, have superior – Well, first they have to establish that they have an interest in the first place. Otherwise, none of this makes any sense. But once they do that, there are a number of ways to establish superior right. And it sounds like one of them would be the government cannot argue against our right, period. And the district court, who has a complete understanding of the facts underlying this case, should be the one that would decide that issue and decide whether, in fact, that does establish that the liquidators have the right to the property. And, of course, if it does decide they have the right to the property, then they get the money. And if it decides that they don't, they can appeal. Unless the Court has any further questions, I'll submit. I think we don't. Thank you. Mr. Little, you have significant rebuttal time remaining. It's been a long morning, and I won't try to spend my time unless I have to, but it's hard to know where to start because – Well, let me start you with a question that relates to the matter of what we can look at that is ongoing in the district court. Why couldn't we take judicial notice, or could we take judicial notice of essentially the docket sheet, which we can access on our computers, as to what has – what orders have been entered and – We have no objection to that, Your Honor. I think you can take notice of that. How the district court believes it continues to have power to proceed in light of the Griggs prohibition is a question that we do not understand, but I just wanted the Court to have both sides when I submitted my letter. I think you can take notice of what's gone on. Just what's happened, not whether it's right or wrong, but just it's – Well, I actually think you can decide it's wrong. I don't think that the district court has jurisdiction on this. But not that it's right? A one-way street, Your Honor. One-way door. It's a one-way street. The reason it's hard to know where to start is because we describe this process below as a shell game, and I think that's an accurate description, and it's continuing today. The government, really, Judge Graber, has not told you that they're going to allow us to argue race judicata and statute of limitations. When we get back, if we get back, and I don't think we should have to, they're going to say you can't argue that because that's not related to superior title. And so I hope the Court will at least make it clear that they've got to let us raise these issues. But I did hear, at least from my understanding, two concessions that may be important to the outcome. One was that you are entitled to prejudgment interest in an amount equal to whatever the United States has, in fact, earned on the money in the meantime. And the second is that insofar as an argument pertains to the relative rights of your client in the United States, that those arguments will all be available to you. I hope that that was a concession. I think Judge Talman had that right. That's a different analytical question. Superior title has to do with title relation-backed doctrine, as you mentioned. This is not a superior title argument, although if that's where we have to put it to make it below, we'll do that. This is an argument that says it doesn't matter who had title. You waited too long. You're barred by the statute. Plus, you already tried once, and you lost on the merits because of the delay. And this is why I describe it as a shell game. Every time we try to come into court and say, wait, this shouldn't be part of the case at all, we are told, wait, we'll put it under a different shell later. Well, you call it a shell, but didn't Congress, in enacting the ancillary proceeding, in essence, substitute what used to be known as the Petition for Remission or Mitigation of the Forfeiture, which was supposed to be an omnibus ancillary proceeding after the criminal forfeiture was ordered, at which innocent third parties could come in and either establish that they had superior title, or they were an innocent bona fide purchaser for value, or for some other reason, the government should give them the money. And that's what you're doing in the ancillary proceeding. They did. But I have to say, the gloss, if you want to call it a gloss, I call it the constitutional right to due process, which was put on that by this Court in Crozier, repeated in Roth, repeated in any number of other circuits, is that Congress left out the most important part, which is the prompt hearing as to the basic legality of the seizure. If a seizure is illegal If you weren't up here, you'd be down there, and it would be happening promptly. I mean, part of what's not prompt is that you're here. No, Your Honor. That's just wrong. That is the – I'm sorry, but that is just a – Why is that wrong? The government wants you to believe that. It's completely untrue. The ancillary proceeding, first of all, can't start until the defendant is sentenced. He's been sentenced. Yes, but he wasn't when we started this process back in May, frankly. But more importantly, if you read the government's brief, here's what they say. It's unbelievable, because it's a misuse of the English language. They say the government – the liquidators can file a speedy motion for summary judgment in the ancillary proceeding. At another point in their brief, they say nothing can happen with regard to summary judgment until discovery's over. And then if you look at the docket sheet, you'll see that they have served the liquidators and other parties with a lot of discovery requests. Discovery is going to last for another year and a half, two years. There is just no speed here. More importantly, if this were a fact-dependent issue where there were disputes about facts, I could agree with Your Honor that, you know, Judge Talman's right. That's supposed to happen in the ancillary proceeding. This is an undisputed, clear legal issue. Does claim preclusion apply or doesn't it? Does the statute of limitations bar it or doesn't it? Those are legal issues which I think the liquidators are entitled to get a ruling on from this Court. They should have had the ruling in the district court, I agree. But we didn't get it. It's the functional equivalent of a preliminary injunction. We have the right to appeal under 1292a1, or it's Rule 41, as Judge Talman said. We have the right to appeal interlocutorily under D'Bella. And under either of those jurisdictional hooks, we have a right to this Court's judgment on these pure legal issues. This money should not be in the proceeding. It should have never been in the proceeding. You know, the Nava decision, I really would urge the Court, you know, to carefully consider what happened in Nava. These statements which the government describes as holdings are simply statements of background which Judge Bybee wrote as a precedent to ruling against the government in a forfeiture case. And he repeated at the end of the opinion in Nava how suspicious we should be of forfeiture efforts because they are such an extreme remedy, how difficult they can be on third parties. Nava involves a third party who the government forfeited against, and this Court said, no, that was wrong. So the discussion about what the Court held, honestly, what I think happened is that they wrote the Nava background section based on the first so many pages of Crozier, and then they missed the last page of Crozier. And Crozier says, no matter what the statute says, we think there's a constitutional right to a prompt hearing. So I don't think Nava does anything at this point. Let me just say this. Sotomayor, has that issue ever gone to the U.S. Supreme Court? Not that I'm aware of, Your Honor. Not that I'm aware of. The idea of a prompt hearing. But I think it's significant that it hasn't. And the reason is you haven't found circuits taking issue with it. I think there's no contrary authority. I actually think the Eleventh Circuit has stated it as contrary in a sort of a sheepish way in the Register case. They go through all the circuits that have gone the other way, and then they say, we appear to be the only circuit that's gone this way, and then they don't rule on the issue. So, I mean, it really is not an issue that's burning. It's not an issue that is ruining forfeiture. You know, the government says the world will end if we have this. Courts have been dealing with crozier for a long time. You can find district court opinions where they've had crozier hearings and they've ruled one way or the other. It's not disruptive to the process because it's only a basic assessment of a basic legality. If it looks like there's probable cause to believe they're forfeitable, then you move  But we don't think that's true here because of the statute of limitations, the act of state doctrine. Let me just say something that's important here. Antigua relied on the district court's unappealed ruling in 2000 that its process was, in a sense, superior to the United States. And that's what this is really about. This is a fight between two sovereigns, the United States and Antigua, as to who gets to distribute Lazarenko's dirty money. And Antigua decided in 1999 their bank on their soil was being used for money laundering and they instituted proceedings. They got a ruling from Judge Legge in 2000. The United States didn't appeal it, could have, they were a party. What did the ruling say? Sovereign, independent, legitimate, go ahead and move the money. All of a sudden in the year 2005, bang, two of their accounts are seized. These are not accounts that Lazarenko has an interest in. He's not an account holder. His name's not on the account. These are correspondent accounts. But the district court has now found that they had a nexus to the criminal behavior, has it not? I think what the district court has found is that the assets that were placed into Eurofed Bank have a nexus, but not that these accounts have that nexus. Here's what the district court found. So is your argument now that we're talking about substitute funds? No, no. We're not talking about, I think we're talking about funds that shouldn't be in the proceeding at all. Well, I understand that. But the problem is we have to deal with a district court determination that there is a nexus between these funds. But you can't do substitute funds on a pretrial seizure. The Rapinski case says that. So he is saying these are proceeds of the extortion, the fraud. No, no. Judge Jenkins, I think, was very careful. Judge Jenkins is a good judge. Judge Jenkins was very careful when he sentenced Lazarenko. All he said was to the extent Lazarenko has any interest in those accounts, it's forfeited. Because he wanted to proceed and give a final judgment. He didn't say that he was finding there was any interest in those accounts. So you think you can still litigate that question in the ancillary proceeding? Oh, absolutely. And, Your Honor, if I could get you or your law clerks to look at two pages in the record, it would be ER-162 and ER-255. Those are the government's initial criminal seizure affidavit, and then their amended criminal seizure. Why did they amend? Because we said they hadn't included facts they needed to include under Franks, including all the counts that had been dismissed. Here's what they say at ER-162. One of the two accounts that's been forfeited here, am I trying to forfeit, is dependent on counts 24 and 47. That's what they say at ER-162. At ER-255, when they amend, they add a sentence, and it says, oh, by the way, the district court judge dismissed those counts. No conviction. There's no conviction on the two counts they say are the basis for that. So that's about $2 million of the dollars in this little proceeding here. So you should win in the ancillary proceeding. We should have won a year and a half ago, Your Honor. Well, we understand, and your time has expired to convince us that you should win here. Thank you. Thank you very much. Thank you. The case just argued so ably by counsel is submitted for decision. We will take, we will adjourn the court for the day, but the panel will return in about five minutes to accommodate requests for ceremonial photographs by the San Jose Mercury News and the court. We are adjourned.
judges: O'connor, Graber, Tallman